UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/15/2015

UMAR ALLI,

                    Plaintiff,

-against-

DEPUTY D. MOORE, DEPUTY RAMOS, OFFICER McCABE, SECURITY OFFICER HARRIS, SECURITY OFFICER MUNDY, SECURITY CAPTAIN THOMPSON, CITY OF NEW YORK, WARDEN OF O.B.C.C., DORA SCHRIRO, HILDY J. SIMMONS, RICHARD T. WELCH, MICHAEL D. REGAN, KENNITH T. ARMSTEAD, LARRY DAVIS, FLORENCE FINKE, LEWIS FINKLEMAN, MICHAEL HOURIHANE, CORRECTIONAL HEALTH SERVICE/PRISON HEALTH SERVICES, and JOHN DOES 1 THROUGH 9, OFFICER REESE, CAPTAIN MEDINA, CATHY POTTER,

                    Defendants.

14 Civ. 06597 (AT)

**MEMORANDUM**
**AND ORDER**

ANALISA TORRES, United States District Judge:

    Plaintiff *pro se*, Umar Alli, brings this action under 42 U.S.C. § 1983, alleging that his constitutional rights were violated in connection with an August 25, 2011 assault at the Otis Bantum Correctional Center on Rikers Island and the subsequent conspiracy to conceal the assault. Defendants City of New York, Correction Officer Mundy, and Dora Schriro ("Movants") move to dismiss the complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2), on the ground that Plaintiff made false statements in his application to proceed *in forma pauperis* ("IFP"). For the reasons stated below, the motion is DENIED.

## BACKGROUND

    Plaintiff filed his complaint on August 11, 2014. ECF No. 1. On his IFP application submitted to the Court on the same day, Plaintiff stated, under penalty of perjury, that he was unable to pay court fees "because of [his] poverty." IFP Application ¶ 3, ECF No. 2. Plaintiff responded to certain questions as follows:

- Question Three asked Plaintiff if he had "received, within the past twelve months, any money from any source" and to "name the source and the amount of money received." *Id.* ¶ 3. Plaintiff responded that "City Law Department . . . funds have yet to be issued to plaintiff . . . ." *Id.*

- Question Four asked Plaintiff if he had "any money, including any money in a checking or savings account" and if so, to specify "how much." *Id.* ¶ 4. Plaintiff checked the "no" box. *Id.*

- Question 8 asked Plaintiff to "[s]tate any special financial circumstances which the Court should consider." *Id.* ¶ 8. Plaintiff responded that he had "[n]o current funds in [his] possession and imprisoned." *Id.* ¶ 8.

On October 3, 2014, Plaintiff was granted IFP status. Order Granting IFP Application, ECF No. 5.

On April 18, 2014, prior to the filing of Plaintiff's IFP application, the Office of the New York City Comptroller ("Comptroller") issued a check for $50,000 to Winston & Strawn LLP, the law firm that represented Plaintiff in an earlier, unrelated lawsuit. Marutollo Decl. Ex. B, ECF No. 22. The $50,000 payment was made pursuant to a settlement agreement. *See* Stipulation and Order of Dismissal, *Alli v. Steward-Bowden*, 11 Civ. 4952, 11 Civ. 7665 (S.D.N.Y. Jan. 31, 2014), ECF No. 236. The Comptroller's records indicate that the check was cashed on April 30, 2014, but not by whom. Marutollo Decl. Ex. B.

## DISCUSSION

Under the IFP statute, codified at 28 U.S.C. § 1915, a prisoner who is unable to pay the filing fees to commence an action in federal court may petition the court for IFP status. 28 U.S.C. § 1915(a)(1)-(2). Instead, the "prisoners [] pay the entire filing fee in installments

2

deducted from their prisoner trust accounts." *Arzuaga v. Quiros*, 781 F.3d 29, 34 (2d Cir. 2015); 28 U.S.C. § 1915(b)(1)-(2). "After the initial partial filing fee has been collected, the prisoner must make monthly payments in the amount of 20% of the income credited to his account in the preceding month, so long as the account contains more than $10, until the entire fee is paid." *Id.* (internal quotation marks and citation omitted). To obtain IFP status, a prisoner must submit: (1) an affidavit stating the prisoner's assets; and (2) a certified copy of his prisoner trust account summary for the six months preceding the filing of the complaint from each prison in which he was confined. 28 U.S.C. § 1915(a)(1)-(2). Through these submissions, "[a] litigant need not demonstrate destitution, but . . . must demonstrate poverty to qualify." *Shabtai v. Levande*, 13 Civ. 4580, 2013 WL 6116850, at *1 (E.D.N.Y. Nov. 20, 2013). Because IFP status ensures that even indigent litigants have equal access to the judicial process, district courts have broad discretion to determine whether a litigant has sufficiently demonstrated poverty. *Id.*; *see also Potnick v. Eastern State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) ("[N]o party must be made to choose between abandoning a potentially meritorious claim or foregoing the necessities of life.").

But, to "weed out the litigants who falsely understate their net worth in order to obtain *in forma pauperis* status," *Hobbs v. County of Westchester*, 00 Civ. 8170, 2002 WL 868269, at *2 (S.D.N.Y. May 3, 2002) (quoting *Atwood v. Singletary*, 105 F.3d 610, 613 (11th Cir. 1997) (internal quotation marks omitted)), the IFP statute directs the court to "dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A). When misrepresentations in a litigant's IFP application are identified, the relevant inquiry is "not the accuracy of every specific representation made by Plaintiff in support of his application . . . , but whether Plaintiff's 'allegation *of poverty* is untrue.'" *Hobbs*, 2002 WL 868269, at *2 (quoting *Adkins v. E.I. Dupont de Nemours & Co.*, 335 U.S. 331, 338 (1948)).

Although the statutory language mandates dismissal if the litigant's allegation of poverty is found to be untrue, courts have recognized that "dismissal is a 'harsh remedy to be saved for the most extreme cases of misrepresentation.'" *Waters v. Camacho*, 11 Civ. 3263, 2012 WL 1117172, at *1 (S.D.N.Y. Apr. 2, 2012) (citation omitted). Dismissal, even with prejudice, is particularly appropriate when a litigant's misrepresentations manifest bad faith. *Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 463, 468 (S.D.N.Y. 2004). But, when a litigant's misrepresentations do not rise to that level, revocation of the litigant's IFP status is a permissible remedy. *See, e.g.*, *Camacho*, 2012 WL 1117172, at *1 (revoking IFP status for failure to disclose $600 when there was "no clear showing that the plaintiff misstated his income in bad faith"); *Choi v. Chem. Bank*, 939 F. Supp. 304, 309 (S.D.N.Y. 1996) (declining to dismiss despite "Plaintiff's substantial and reprehensible misrepresentations on his [IFP] application" because neither the court nor the defendant suffered prejudice).

Plaintiff misrepresented his assets by omitting from his IFP application the dollar amount of the settlement payment. Plaintiff concedes that he intentionally left out this information, but explains that he did so because the $50,000 was not in his possession when he filed the application. Pl. Resp. ¶ 15, ECF No. 30. However, actual possession of a settlement payment is not required to trigger a duty to report the payment to the court; mere acceptance of a settlement is sufficient. *See, e.g.*, *Cuoco*, 328 F. Supp 2d at 467 ("Cuoco knowingly misled this Court by failing to disclose that she agreed to accept $13,500 from the Government just three weeks prior to seeking IFP certification. Indeed, despite her contention that she did not know when the funds would arrive, it is 'inconceivable' that she innocently overlooked her obligation to report those funds." (internal citations omitted)). Plaintiff cannot dispute that on January 31, 2014, he agreed to settle the earlier case. *See* Stipulation and Order of Dismissal, *Alli v. Steward-Bowden*, 11

Civ. 4952, 11 Civ. 7665 (S.D.N.Y. Jan. 31, 2014), ECF No. 236. Furthermore, Plaintiff admits that at the time he filed his IFP application, he knew that Winston & Strawn possessed the settlement payment. *See* Pl. Resp. Ex. A, at ¶ 3, ECF No. 30 ("Plaintiff answered said question truthfully[,] . . . [b]eing that the settlement award was not directly issued to Plaintiff."). Plaintiff, therefore, had a duty to provide that information to the court. In the alternative, Plaintiff argues that his response to Question 3, which stated that he was waiting for money from the City Law Department but had not received those funds, constituted sufficient disclosure. Pl. Resp. ¶ 23. However, the precise amount of the payment is critical to the purpose of the IFP application, which is to gather information to assess the litigant's claim of poverty.

Despite Plaintiff's failure to disclose the amount of the anticipated payment, the Court finds that Plaintiff's conduct falls short of bad faith. A person acts in bad faith when he intentionally conceals a source of income in order to gain IFP status. *Cuoco*, 328 F. Supp. 2d at 468. But, as noted above, Plaintiff did not conceal the settlement payment altogether. In his response to Question 3, Plaintiff admitted that he was awaiting payment. IFP Application ¶ 3. This partial disclosure distinguishes Plaintiff's conduct from that of applicants who have been found to have acted in bad faith based on their complete failure to inform the court of an expected payment. *Cf. Waters v. King*, 11 Civ. 3267, 2012 WL 1889144, at *1 (S.D.N.Y. May 24, 2012) ("In particular, Waters failed to disclose that, approximately one month before, he had received a check for $600 in connection with the settlement of an earlier, unrelated lawsuit."); *Vann v. Horn*, 10 Civ. 6777, 2011 WL 3501880, at *2 (S.D.N.Y. Aug. 9, 2011) ("[P]laintiff did not disclose on his IFP application that he received a $30,000 settlement from the City of New York on February 2, 2010—approximately six months before he filed for IFP status."); *Cuoco*, 328 F. Supp. 2d at 468 (finding bad faith where litigant omitted $13,500 settlement payment

from her IFP application and requested that the settlement payment be sent to her mother instead of her prison account).

Moreover, Plaintiff offers a plausible explanation for the delay between the issuance of the check to Winston & Strawn and the depositing of the funds into his prisoner trust account. Apparently, Winston & Strawn made attempts to transfer the money to Plaintiff, but was unsuccessful until November 5, 2014. Pl. Resp. ¶ 18; Pl. Resp. Ex. A ¶ 7. Notably, the Comptroller's financial records do not contradict Plaintiff's explanation. Contrary to Movants' assertion that the check was made payable to both Winston & Strawn and Plaintiff, Def. Reply 2 n.3, ECF No. 31, only the law firm is listed as the payee, Marutollo Decl. Ex. B. Nor do the Comptroller's records support Movants' attempt to conflate the cashing of the $50,000 check with possession of the money by Plaintiff; the records only indicate that the payment was cleared on April 30, 2014, but not by whom. Marutollo Decl. Ex. B. The Court credits Plaintiff's explanation because he paid the filing fee in full on December 18, 2014. Docket Entry between ECF No. 25 and 28. Deferred payments of the filing fee are automatically deducted from a prisoner's account whenever the balance from the prior month exceeds $10. 28 U.S.C. § 1915(b)(2). Therefore, Plaintiff's payment on December 18, 2014 confirms that at least prior to November 2014, Plaintiff did not have more than $10 in his prison trust account.

Lastly, Plaintiff's familiarity with the IFP process does not compel the conclusion that Plaintiff acted in bad faith. Movants cite at least four cases in which Plaintiff has obtained IFP status. Order Granting IFP Application, *Alli v. Warden of A.R.N.D.C.*, 12 Civ. 3947 (S.D.N.Y. July 16, 2012), ECF No. 6; Order Granting IFP Application, *Alli v. The City of New York*, 11 Civ. 7665 (S.D.N.Y. Nov. 8, 2011), ECF No. 4; Order Granting IFP Application, *Alli v. Muvley*, 11 Civ. 4047 (S.D.N.Y. June 29, 2011), ECF No. 4; Order Granting IFP Application, *Alli v.*

6

*Steard-Bowden, et al.*, 11 Civ. 4044 (S.D.N.Y. June 22, 2011), ECF No. 3. Although a plaintiff's prior experience with IFP status may serve as evidence that his misrepresentations were made in bad faith, *e.g.*, *Vann*, 2011 WL 3501880, at *4 ("This is also not the first time plaintiff has misrepresented his financial assets in applying to proceed IFP."), the Court finds that the absence of evidence demonstrating that Plaintiff deliberately withheld financial information on his four prior IFP applications mitigates the probative value of Plaintiff's familiarity with the IFP process. *See, e.g., Johnson v. Truedo*, 11 Civ. 627, 2012 WL 3054114, at *2 (N.D.N.Y. June 15, 2012) (discounting plaintiff's experience with IFP process because "no evidence has been proffered that in any of Johnson's multiple prior actions, he deliberately withheld any information in an IFP application"), *adopted by*, 11 Civ. 627, 2012 WL 3062293 (N.D.N.Y. July 26, 2012).

## CONCLUSION

For the reasons stated above, the Court concludes that Plaintiff's failure to disclose the anticipated $50,000 settlement payment was not made in bad faith. Accordingly, the Court finds that dismissal is unwarranted, and the appropriate remedy is revocation of Plaintiff's IFP status. Because Plaintiff has already paid his filing fee in full, *see* Docket Entry between ECF No. 25 and 28, the issue is moot. Movants' motion to dismiss is, therefore, DENIED. The Clerk of Court is directed to: (1) mail a copy of this order and all unpublished decisions cited therein to Plaintiff *pro se*; and (2) terminate the motion at ECF No. 20.

Dated: September 15, 2015
New York, New York

_____
ANALISA TORRES
United States District Judge